THE HON. JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PREMIER HARVEST LLC, a Washington Limited Liability Company; PREMIER HARVEST LLC, a Alaska Limited Liability Company; PREMIER HARVEST ADAK LLC, an Alaska Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>AXIS SURPLUS INSURANCE COMPANY, a Foreign Corporation; CUNNINGHAM LINDSEY U.S., INC., a Foreign Corporation,<br><br>Defendants. | No.: 17-cv-00784-JCC<br><br>DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE<br><br>**NOTE ON MOTION CALENDAR: FRIDAY, SEPTEMBER 14, 2018** |

### I.   INTRODUCTION

As this Court has already concluded, Premier Harvest's financial condition is directly relevant to this litigation.  Premier Harvest represented to AXIS and then to this Court that in early 2016, it made desperate attempts to make storm repairs so as to resume operations, and that the $3 million that AXIS paid for storm damage proved insufficient.  Premier Harvest also claims that it has suffered consequential damages, including loss of its business, as a result of AXIS's failure to immediately pay more than $3 million.  However, discovery has shown that Premier Harvest was considering bankruptcy less than two months before the first weather

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 1
NO.: 17-CV-00784-JCC

LEGAL\37849312\1

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

event. In the year leading up to the weather event, Premier Harvest had seen partner equity drop by approximately $1.5 million. In that time span, multiple efforts to secure millions of dollars in financing or increased capital failed. The evidence also shows that, despite its initial promises to the contrary, Premier Harvest made no attempt to segregate storm-related repairs and costs from other expenditures. While Lisa Anderson represented to this Court in a declaration filed in 2017 that Premier Harvest spent the entire $3 million on storm repairs, she has since admitted this representation was false. Indeed, Premier Harvest included in its insurance claim submissions expenses it knew to be completely unrelated to the loss.

Meanwhile, both prior to and during litigation, AXIS has sought Premier Harvest's financial documents to support Premier Harvest's claims that it was focusing on making storm repairs to resume operations, and that the $3 million that AXIS paid for storm damage proved insufficient. Premier Harvest's attorney, Robert McMillen, admits that these requests were reasonable and appropriate, and he worked with Premier Harvest's accountant, John Price, to try and obtain the information. In the litigation, AXIS has sought discovery of Premier Harvest's financial information for the additional purpose of defending against Premier Harvest's claim that it suffered substantial economic losses as a consequence of AXIS's alleged claims-handling errors. Recently, however, Premier Harvest's accountant confirmed in a deposition that Premier Harvest has allowed the destruction of key financial data.

Premier Harvest's spoliation of the financial evidence is severely prejudicial to AXIS. In this motion, AXIS seeks the Court's order that Premier Harvest be precluded from introducing into evidence, or making argument based on, any of its financial records, and that it be precluded from relying on or making argument concerning the Expert Report of Neil J. Beaton, CPA, dated June 15, 2018, and that Mr. Beaton's report and testimony, if any, be held inadmissible. AXIS also seeks the Court's order that the jury be instructed to infer that the destroyed financial records would have been unfavorable to Premier Harvest and its claims.

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 2
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1

## II.    FACTS

### A.    Premier Harvest Claimed To Be Segregating Storm-Related Expenses.

On December 28, 2015, McMillen wrote to AXIS's adjuster and stated that, "from an accounting perspective," Premier Harvest was "segregating normal operating expenses from expenses associated with this loss." *See* Dkt. 73-1, Ex. 2. He stated this was an appropriate method of documenting the loss and that he was "confident they are doing so in an appropriate manner." *Id.*

### B.    AXIS Advanced $3 Million Based on Premier Harvest's Representations that Those Funds Were Urgently Required for Storm Repairs.

The following day, based on a scope of repair and estimate prepared by David Anderson's company, DL Anderson (*id.*, Ex. 1), and plaintiffs' contention that the funds were required on an emergency basis, AXIS advanced $500,000 upon receipt of a signed proof of loss in that amount. *Id.*, Ex. 3. On January 28, 2016, Dustin Anderson sent an email to AXIS's adjuster stating that the facility's sprinkler systems were "freezing and rupturing along with the main water system." *Id.*, Ex. 7. Dustin's email demanded a rough order of magnitude (or "ROM") "immediately" and asserted that Premier Harvest needed "more than" $2 million "immediately to properly just patch," even though AXIS had not had any opportunity to inspect the property following this alleged "freeze event." *Id.* By this time, AXIS had already advanced an additional $1,000,000 based on Plaintiffs' representations. Dkt. 73-1, Ex. 6.

On February 19, 2016, McMillen again wrote to AXIS stating that more funds were urgently needed to pay for supplies to be shipped on a barge leaving on March 12. *Id.*, Ex. 8. He acknowledged that further investigation into the claim was necessary, but asserted that the additional "partial payment" could not wait because using the barge to ship materials "saves money, but occurs infrequently." *Id.* Accordingly, on March 3, 2016, AXIS advanced an additional $1,500,000, bringing the total advanced to $3 million. *Id.*, Ex. 9.

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 3
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1

**C.     AXIS Requests Financial Documentation Supporting Premier Harvest's Claim.**

Premier Harvest continued to assert that yet more funds were urgently required to restore the property to its pre-loss condition. In letters dated March 10, March 25, April 15, June 20, August 1, October 3 and December 13, 2016, AXIS requested photos, inventories, repair estimates, and information about pre- and post-storm condition of the property. *See* Dkt. 14. Starting with its August 1, 2018 letter, AXIS also asked for an accounting of how the $3 million had been spent, in part to determine the actual cost to repair the damage allegedly caused by the weather events. *See* Craig H. Bennion Declaration ("Bennion Dec."), Ex. C. McMillen testified in his deposition that he believed this request to be reasonable under the circumstances. *See* Bennion Dec., Ex. D. He communicated with Premier Harvest's accountant, John Price, in an attempt to produce the requested information. *Id.* On September 23, McMillen wrote to AXIS stating that Premier Harvest was still working on providing the requested information, but asserting that "the more pressing concern is getting the facility fully functional and operational." Dkt. 73-1, Ex. 15.

**D.     Premier Harvest, Through Its Accountant, Provides an Incomplete Spreadsheet as "Loss Documentation."**

In late October and early November, Price's office submitted to AXIS a collection of estimates, receipts and invoices, summarized in a spreadsheet titled "Expenses for Insurance Claim." *Id.*, Exs. 16 & 17. These "expenses" included the purchase price and shipping costs for "supplies," which included cosmetics, firearms, recreational fishing gear, stereo equipment, video equipment, artwork, beer brewing supplies, a poker table and colon cleansers and other nutritional supplements. *Id.*, Ex. 17. The expenses also included travel, food, lodging and payroll expenses for Premier Harvest's principals and employees, with no segregation of storm-related expenses from other operating expenses. *Id.*, Ex. 16.

On April 3, 2017, plaintiffs provided a binder of "loss documentation" that included the same, uncategorized batch of documents provided in November 2016, along with, for the first

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 4
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1

time, an inventory of personal property allegedly damaged in the storm. *Id.*, Ex. 18. The binder still provided no accounting of which expenses were incurred relating to the storm.

### E. AXIS Requests Financial Data Both To Investigate Premier Harvest's Claim and to Defend Against Economic Damages Allegations.

Premier Harvest used QuickBooks to track all of its expenses and revenue. *See* Bennion Dec., Ex. E. Premier Harvest used this accounting software to support the preparation of financial statements (balance sheets, profit and loss statements, etc.). *See id.* As noted, AXIS requested an accounting of how Premier Harvest had spent the $3 million of advances, but received only a vague and incomplete spreadsheet that failed to differentiate between the insurance claim and other business or personal expenses. In order to fully investigate this issue, it would have been necessary to review the data reflected in Premier Harvest's full QuickBooks data. In addition, Premier Harvest's First Amended Complaint asserted economic losses stemming from AXIS's failure to pay more than $3 million.

After the lawsuit commenced in April 2017, AXIS sought discovery of information and documents relating to Premier Harvest's financial status during all relevant times, beginning before Premier Harvest occupied the fish processing facility at Adak Island, Alaska. Bennion Dec., Ex. A (RFP Nos. 2, 23, 24, 27, & 28). As discussed, this information was relevant to Premier Harvest's contention that it desperately needed more than $3 million to repair the storm damage. In the context of the litigation, the information is also essential for AXIS's defense of Premier Harvest's claim that it lost business revenue and eventually went out of business due to the fact that AXIS paid "only" $3 million.

### F. Premier Harvest Allowed Its Financial Records To Be Destroyed, Even After Receiving Discovery Requests.

AXIS served the aforementioned discovery requests on December 7, 2017. Premier Harvest served answers and objections on January 29, 2018. Premier Harvest provided copies of its 2012-2015 federal tax returns, but regarded all other financial documents irrelevant,

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 5
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1

including all financial records from after the weather events. The responses were incomplete, as explained in a February 16, 2018, letter from AXIS's counsel. *See* Bennion Dec., Ex. B. The letter specifically referred to the QuickBooks records as being relevant. *See id.*

Counsel held a "meet and confer" discovery conference on February 23. *Id.*, ¶ 6. Counsel for Premier Harvest asserted that post-storm data was irrelevant, but assured that nonetheless, the QuickBooks records would be produced. *Id.* However, on February 28 counsel advised that the records stored electronically by QuickBooks had been deleted because Premier Harvest failed to pay several outstanding invoices and QuickBooks closed the account. *See id.*; Bennion Dec., Ex. F and G. AXIS thereafter filed a motion to compel. *See* Dkt. 69. The Court granted this motion in part, finding that Premier Harvest's post-storm financial information ***was*** relevant and discoverable, given the allegations that Premier Harvest spent those funds on non-storm-related improvements and personal items. Dkt. 90, at 2-3.

More recently, Price testified that in February 2018, he had attempted to log into Premier Harvest's Quickbooks account, but was told the account had been cancelled and the data erased about one month prior—*i.e.*, in January 2018—due to Premier Harvest's failure to pay multiple invoices. *See* Bennion Dec., Ex. G. Price then recreated Premier Harvest's financial ledger "from scratch" on a new QuickBooks account by manually entering data provided by Premier Harvest. *Id.*; *see also* Ex. F. Specifically, Price stated that he "had to redo everything in the last two months. *So whatever may have been categorized back in '16 was lost* and I redid everything." *Id.* (emphasis added).

According to QuickBooks, they generally hold a customer's data for ***at least one year*** after payments stop, sometimes longer, before deleting the customer's data. *See* 8/30/2018 Declaration of Collene Vanderburg ("Vanderburg Dec."), ¶ 3. Thus, it appears that Premier Harvest had been ignoring and not paying its QuickBooks bills ***since at least January 2017***.

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 6
NO.: 17-CV-00784-JCC

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1

**G.     The Lost QuickBooks Data Is Necessary To Show How, When and by Whom the Data Was Entered, and If It Was Altered.**

It also clear from Price's testimony that although he had submitted the "loss documentation" spreadsheet to AXIS, Price had not actually prepared that spreadsheet. Rather, a spreadsheet was prepared and revised by Lisa Anderson and her assistant, Ellie Garcia.  *See* Bennion Dec., Ex. G, H & I.  Based on that spreadsheet, it appears that Premier Harvest may have recoded operational expenses as insurance claim expenses in order to artificially claim a higher amount from AXIS.

Any such changes would have been reflected in the metadata of the original QuickBooks account, now lost.  "Metadata" is the term used to describe information about information—*i.e.*, data about data.  Vanderburg Dec., ¶ 4.  In this case, the QuickBooks metadata would have included information about how the data in the QuickBooks was developed, including who made entries, when they were made, and whether and when they were edited.  *Id.*  By ignoring a year's worth of invoices from QuickBooks—even as it knew the data had been requested through discovery—Premier Harvest allowed this data to be destroyed.  Meanwhile, the new QuickBooks account, and the associated general ledger, reflect only a snapshot of Premier Harvest's expenses as determined *post hoc* by Premier Harvest.  *Id.*  It is impossible to test or verify the accuracy of the data in the new, "recreated" account because of the information that Premier Harvest allowed to be destroyed.  *Id.*

### III.     ARGUMENT

**A.     Legal Standard for Spoliation**

Spoliation of evidence falls within the court's inherent power to sanction. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993) ("A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence.")  Spoliation of evidence is the "failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 7
NO.:  17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1

638, 649 (9th Cir.2009). A party's "duty to preserve evidence is triggered when a party knows or reasonably should know that the evidence may be relevant to pending or future litigation." *E.E.O.C. v. Fry's Elecs., Inc.*, 874 F.Supp.2d 1042, 1044 (W.D. Wash. 2012). Once triggered, this duty extends to any documents or tangible items that the party knows or should know are relevant to the litigation. *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 678 (W.D. Wash. 2014). If a document is subject to automatic deletion—for example, under a document retention policy—the party must suspend that policy and preserve the documents, or face sanctions. *See id.* at 682 (imposing sanctions for failure to prevent automatic deletion of documents); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 881 F.Supp.2d 1132, 1137 (N.D. Cal. 2012) (same); *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1070 (N.D. Cal. 2006) (same). Courts examine the following three factors in determining whether to award sanctions: (1) whether the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) whether the records were destroyed with a "culpable state of mind"; and (3) whether the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012).

**B.     Premier Harvest Unquestionably Had a Duty to Preserve the Data.**

Here, Premier Harvest was clearly aware that the QuickBooks data "may be relevant" to the litigation. Litigation had already been filed, Premier Harvest had placed its financial condition at issue in its opening pleading, and Premier Harvest's financial data had already been requested in discovery when Premier Harvest allowed the data to be destroyed. As such, under the above-cited case law, Premier Harvest had an unquestionable duty to preserve the QuickBooks data, including the duty to prevent automatic deletion. Premier Harvest violated that duty.

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 8
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1

### C. Premier Harvest's Spoliation Was Willful.

In the Ninth Circuit, a finding of "bad faith" is not necessary to establish a culpable state of mind; rather, all the Court must find is that Premier Harvest acted with a "conscious disregard" of its discovery obligations. *Apple Inc. v. Samsung Elecs. Co., Ltd*., 881 F. Supp. 2d 1132, 1147 (N.D. Cal. 2012). Premier Harvest will likely argue that the data's deletion was merely negligent and point to Dustin and Lisa Anderson's lack of sophistication as an excuse.

That argument must be rejected. At the time the data was destroyed, litigation was not merely foreseeable; it had been pending for several *months* and discovery had *already been served* requesting the data. Furthermore, at that point, Premier Harvest had not merely missed one bill; rather, it had ignored **an entire year** of bills. Thus, Premier Harvest was *actually aware* of its obligation to preserve the documents, yet it ignored repeated threats from QuickBooks and allowed the documents to be automatically deleted. "Under the controlling caselaw outlined above, this situation, without more, would qualify as willful spoliation of evidence that merits sanctions." *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 679 (W.D. Wash. 2014).

Premier Harvest also cannot hide behind its principals' lack of sophistication because it has been represented by counsel during the entire period. As a matter of law, "[c]ounsel bear responsibility for coordinating their clients' discovery production." Id. at 678. Even if Premier Harvest's principals could plausibly assert ignorance or mere negligence—a dubious assertion in the first instance—counsel had a duty to advise Premier Harvest of its discovery obligations and ensure that the financial data was being preserved. After the document requests were served, while Plaintiffs were delaying their production and making unmeritorious arguments regarding relevance, they were ignoring invoices from QuickBooks and allowing destruction of data that AXIS had requested.

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 9
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1

### D. Relevance of the Spoliated Evidence

Where spoliation is willful—as it is here—"that fact alone is sufficient to demonstrate relevance." *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003); *See also Nutrition Distribution LLC v. PEP Research, LLC*, 16CV2328-WQH(BLM), 2018 WL 3769162, at *16 (S.D. Cal. Aug. 9, 2018) (same).

Regardless, the relevance of the lost data is obvious, as explained above. Premier Harvest's claim for economic damages center entirely on Premier Harvest's financial picture before and after the loss. Premier Harvest has willfully deleted that picture, offering only a *post hoc* version created during litigation. Premier Harvest's accounting of expenses—including changes and recording done during AXIS's investigation—is also central to AXIS's fraud claim.

### E. Appropriate Sanctions

The Ninth Circuit "has recognized as part of a district court's inherent powers the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir.1992). A party's spoliation need not have been in bad faith to warrant the imposition of sanctions. *Perez v. United States Postal Serv.*, C12-00315 RSM, 2014 WL 10726125, at *2 (W.D. Wash. July 30, 2014); *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006). Appropriate sanctions include an adverse inference instruction, exclusion of evidence proffered by the spoiling party, and dismissal or default. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

#### 1. Evidence of Premier Harvest's Alleged Economic Damages Should Be Excluded.

The Court's inherent authority to sanction spoliation includes the power to exclude evidence that, given the spoliation, would "unfairly prejudice an opposing party." *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir.1992). The Ninth

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 10
NO.: 17-CV-00784-JCC

LEGAL\37849312\1

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

Circuit has found exclusion sanctions warranted where undisputed destruction of evidence "rendered unreliable virtually all of the evidence that a finder of fact could potentially consider." *Id.*

Premier Harvest's claim for economic damages necessarily depends on its financial performance.  The lost QuickBooks data constituted the means by which Premier Harvest tracked that financial performance.  The data recreated by Premier Harvest in 2018 is clearly not reliable.  Premier Harvest's misconduct in allowing the deletion of its records "threaten[s] to distort the resolution of the case" and forces the jury "to rely on incomplete or spotty evidence."  *Leon*, 464 F.3d at 959; *Anheuser-Busch, Inc. v. Nat. Beverage Dist.*, 69 F.3d 337, 354 (9th Cir. 1995) (finding trial court properly dismissed counterclaim of a party that concealed relevant documents).  Therefore, Premier Harvest should not be allowed to introduce evidence or argue in support of its claim for consequential damages.  Allowing that evidence would only reward Premier Harvest for its wrongdoing in enabling and allowing the destruction of its financial records.  The evidentiary restriction should include the report and any testimony of Premier Harvest's damages expert, Neil J. Beaton, CPA.  A lesser sanction will not alleviate the severe prejudice to AXIS caused by the loss of relevant financial information that is necessary for the presentation of its defense.  The prejudice to AXIS is neutralized only by preventing Premier Harvest from making its consequential damages claim to the jury.

### 2. An Adverse Jury Instruction Is Also Appropriate

"In determining whether an adverse inference instruction is warranted, courts evaluate whether (1) the spoliator had an obligation to preserve the evidence at the time it was destroyed, (2) the spoliator possessed a culpable state of mind, and (3) the evidence was relevant to a party's claim or defense."  *Perez v. United States Postal Serv.*, C12-00315 RSM, 2014 WL 10726125, at *6 (W.D. Wash. July 30, 2014).  For the reasons already discussed, all three of these prongs are met in this case.

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 11
NO.:  17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1

Thus, the only remaining question is what instruction to impose. "Possible adverse inference instructions range in their degree of harshness, from a relatively sever instruction that the jury regard certain facts as admitted to a mandatory or rebuttable presumption that missing evidence is relevant and favorable to the non-spoiling party." *Perez*, *supra*. Here, AXIS seeks only the less onerous sanction of a presumption that the evidence is relevant and favorable to AXIS. The Court should instruct the jury to presume that the destroyed financial records would have been unfavorable to Premier Harvest as they pertain to both Plaintiffs' claims and AXIS's counterclaim. The Court should also instruct the jury that Premier Harvest is responsible for the destruction of the QuickBooks records, and to presume that the destroyed evidence corroborates AXIS's position that it had nothing to do with the failure of Premier Harvest's business and caused no consequential damages.

### IV.   CONCLUSION

Premier Harvest should not be allowed to profit from allowing the destruction of important evidence. AXIS requests that the Court impose the following sanctions: 1) preclude Premier Harvest from presenting any evidence in support of its consequential damages claims, including the report and testimony of Mr. Beaton; and 2) issue adverse jury instructions, as set forth above.

DATED this 30th day of August, 2018.

COZEN O'CONNOR

By:  */s/ Craig H. Bennion*
Thomas M. Jones, WSBA No. 13141
Craig H. Bennion, WSBA No. 11646
William F. Knowles, WSBA No. 17212
Jonathan Toren, WSBA No. 46896

999 Third Avenue, Suite 1900
Seattle, Washington 98104
Telephone: 206.340.1000
Attorneys for Defendant AXIS Surplus Insurance Company

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 12
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

Jeffrey I. Tilden, WSBA #12219    jtilden@gordontilden.com, eevans@gordontilden.com
Greg D. Pendleton, WSBA #38361    gpendleton@gordontilden.com, chudson@gordontilden.com
**GORDON TILDEN THOMAS & CORDELL, LLP**
*Attorneys for Plaintiffs*

William C. Smart, WSBA #8192    wsmart@kellerrohrback.com; iruiz@kellerrohrback.com; isaac-ruiz-3420@ecf.pacerpro.com, isaacinseattle@outlook.com, ndyakanoff@kellerrohrback.com, plewis@kellerrohrback.com, shannon-mckeon-5068@ecf.pacerpro.com, smckeon@kellerrohrback.com, william-smart-9110@ecf.pacerpro.com
Isaac Ruiz, WSBA #35237    iruiz@kellerrohrback.com, chris-jarman-3335@ecf.pacerpro.com, cjarman@kellerrohrback.com, gabriel-verdugo-1773@ecf.pacerpro.com, gverdugo@kellerrohrback.com, isaac-ruiz-3420@ecf.pacerpro.com, isaacinseattle@outlook.com, kathryn-knudsen-1138@ecf.pacerpro.com, ndyakanoff@kellerrohrback.com, plewis@kellerrohrback.com, shannon-mckeon-5068@ecf.pacerpro.com, smckeon@kellerrohrback.com
Ian S. Birk, WSBA #31431    ibirk@kellerrohrback.com, chris-jarman-3335@ecf.pacerpro.com, cjarman@kellerrohrback.com, ian-birk-6391@ecf.pacerpro.com, Kknudsen@kellerrohrback.com, ndyakanoff@KellerRohrback.com, smckeon@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
*Attorneys for Plaintiffs*

Joseph D. Hampton, WSBA #15297    jhampton@bpmlaw.com, dmarsh@bpmlaw.com, klangridge@bpmlaw.com
Vasudev N. Addanki, WSBA #41055    vaddanki@bpmlaw.com, dmarsh@bpmlaw.com
Kathryn N. Boling, WSBA #39776    kboling@bpmlaw.com, klangridge@bpmlaw.com
**BETTS, PATTERSON & MINES, P.S.**
*Attorneys for Defendant Cunningham Lindsey U.S. Inc.*

DATED AND SIGNED this 30th day of August, 2018.

COZEN O'CONNOR

By: */s/ Craig H. Bennion*
 Craig H. Bennion, WSBA No. 11646

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
MOTION FOR SANCTIONS - 13
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\37849312\1