THE HON. JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PREMIER HARVEST LLC, a Washington Limited Liability Company; PREMIER HARVEST LLC, a Alaska Limited Liability Company; PREMIER HARVEST ADAK LLC, an Alaska Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>AXIS SURPLUS INSURANCE COMPANY, a Foreign Corporation; CUNNINGHAM LINDSEY U.S., INC., a Foreign Corporation,<br><br>Defendants. | No.: 17-cv-00784-JCC<br><br>DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE<br><br>**NOTE ON MOTION CALENDAR:<br>FRIDAY, SEPTEMBER 14, 2018** |

### I. Emails Prove that Plaintiffs Used Codes for Insurance Expenditures

Plaintiffs' Response alleges that the *post hoc* recreation of Premier Harvest's QuickBooks data is just as good as the original, because the original never coded any expenses as related to the insurance claim to begin with. As support, Plaintiffs rely on a declaration of John Price stating that Premier Harvest never had any code for insurance claim expenses.

**However, the contemporaneous emails prove Price's declaration to be untrue.** In fact, the November 2016 spreadsheet purporting to show Plaintiffs' storm-related expenditures was based *entirely* on the accounting codes utilized by Plaintiffs. Indeed, since it was Ellie

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 1
NO.: 17-CV-00784-JCC

LEGAL\38276907\1

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

Garcia—and not John Price—who did the original coding, Price does not have the requisite personal knowledge to attest as to the coding used. In discussing how to compile the spreadsheet submitted to AXIS in November 2016, Premier Harvest's Ellie Garcia wrote to Price: "**Here are the accounts that the expenses are under[:] 1685- Insurance Payout[;] 1665- Adak Roof Repair**." *See* 9/14/2018 Declaration of Jonathan Toren ("Toren Dec."), Ex. A. Based on the extensive evidence showing that Dustin and Lisa Anderson lined their pockets with the insurance proceeds and used them to make other purchases or improvements unrelated to the claim, coupled with the evidence that Plaintiffs spent well under $1 million on actual storm repairs, AXIS suspects that Plaintiffs artificially moved various expenditures to the above two codes so that the November 2016 spreadsheet would total over $3 million. This would have been entirely consistent with Plaintiffs' other intentional misrepresentations made to inflate their claim. Only the original metadata could have definitively proven whether or not that occurred, and Plaintiffs have willfully allowed that evidence to be destroyed, even after it was requested in discovery.

In that regard, the metadata is the point, and Plaintiffs' response entirely ignores it. In fact, Plaintiffs' response never even mentions the metadata. Plaintiffs argue that Price's after-the-fact "recreation" of Plaintiffs' accounting records represents an "upgrade." That is only true if that recreation is entirely consistent with Plaintiffs' original accounting—which we know is not the case. When he created the general ledger, Price used a single code for "Repair and Maintenance," contrary to the codes used by Premier Harvest in the original ledger. *See* Dkt. 117, ¶ 3. Plaintiffs also cannot ask AXIS and the Court to simply presume that the original accounting was never altered, when that contention is now impossible to verify because Plaintiffs themselves have willfully allowed the metadata to be destroyed.

### II. The Accounting Data Is Manifestly Relevant and Discoverable

AXIS's motion thoroughly explained the relevance of the QuickBooks data. Plaintiffs' response ignores much of that explanation and argues the data is irrelevant because the policy

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 2
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\38276907\1

provides ACV coverage, such that Plaintiffs can spend the money however they please. This argument completely ignores the data's central relevance to Plaintiffs' economic damages claim. But it also fails with respect to AXIS's fraud claim.

From the outset of their claim, the Plaintiffs represented that they were documenting the loss by "***segregating normal operating expenses from expenses associated with this loss***." *See* Dkt. 73-1, Ex. 2 (emphasis added). During the early phases of AXIS's investigation, Plaintiffs then repeatedly implored AXIS to advance money urgently to fund repairs and shipments of supplies because Plaintiffs were desperately attempting to make storm repairs and restore operations. *See* Dkt. 107, at 3. Plaintiffs made these requests despite the fact—acknowledged expressly by Plaintiffs' attorney—that AXIS had not been able to complete its investigation. *See id.* AXIS complied and paid $3 million, even though its consultants had not even visited Adak since the alleged "freeze event" in mid-January 2016.

When Plaintiffs then sought more money, AXIS requested an accounting of how the $3 million was spent, consistent with Plaintiffs' own pledge to segregate storm-related expenses, and in order to verify Plaintiffs' claim that the repairs were actually costing more than what AXIS had already paid. Plaintiffs' own attorney agreed (and still agrees) that these requests were reasonable, and turned to Plaintiffs' accountant, John Price, to provide a response. *See* Dkt. 108-1, Ex. D. That response, as noted, relied on Plaintiffs' own coding of their expenses.

After filing this lawsuit, in their successful attempt to defeat AXIS's motion to dismiss, Plaintiffs submitted a declaration from Lisa Anderson stating that Plaintiffs had spent the entire $3 million on storm repairs. Ms. Anderson recently admitted this was false.

Now, Plaintiffs are attempting to cover up their misrepresentations by arguing that they were free to spend the $3 million however they pleased. An apparent corollary to that argument is that Plaintiffs were also free to withhold or destroy evidence regarding how they spent that money. In addition to contradicting all of Plaintiffs' representations to AXIS in the course of the claim investigation, Plaintiffs' Response also ignores Plaintiffs' own central

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 3
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\38276907\1

damages theory, which is that AXIS's failure to pay more than $3 million to Plaintiffs prevented them from fixing the property, thereby causing them to go out of business. This theory necessarily presumes that Plaintiffs *were actually trying to fix the property*. Now that evidence has proven that, in fact, Plaintiffs spent the money on artwork, firearms, a kegerator, a poker table, Dustin's boat, Lisa's jewelry, etc., Plaintiffs suddenly argue they were free to spend the money however they pleased (and so they did).

Plaintiffs' new argument, far from helping their case, actually underscores the need for the sanction sought in AXIS's motion. Plaintiffs' argument itself represents a tacit admission that Plaintiffs' entire case is a fraud. If Plaintiffs are essentially admitting that they were not even attempting to repair the storm damage, and were free to "gamble it away in Las Vegas" (to quote Plaintiffs' own Response), they should not be allowed to argue to a jury that AXIS's "delay" in supplementing its $3 million of advances prevented them from completing storm repairs, and that business otherwise was booming. This is particularly true given that Plaintiffs willfully destroyed their contemporaneous accounting data, which is clearly central to their economic damages claim.

### III.  Sanctions Are Appropriate Under Rule 37(e)

Plaintiffs' Response includes an extensive lecture on the 2015 amendments to Rule 37. Plaintiffs fault AXIS for relying on case law pre-dating the 2015 amendments. This is not an accurate characterization of AXIS's motion, which followed and was consistent with the new rule. AXIS relied on pre-2015 case law because of the paucity of case law since that date. The 2015 amendments do not render all previous case law obsolete, insofar as the case law does not conflict with the amendments. Nothing in AXIS's motion conflicts with the new rule in any way, and Plaintiffs' response does not identify any specific conflict. Rather, Plaintiffs essentially make three arguments under Rule 37(e), all of which were addressed in AXIS's motion, and none of which withstand the slightest scrutiny.

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 4
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\38276907\1

### A. The QuickBooks Metadata Cannot Be Restored or Replaced.

Plaintiffs argue that the QuickBooks data is not actually lost, insofar as it was restored by John Price when he recently created Premier Harvest's accounting records. This argument has already been debunked in AXIS's initial Motion and above. The data has only been "restored or replaced" if Plaintiffs are simply taken at their word that the *post hoc* creation is consistent with how these expenses and revenues were initially recorded by Plaintiffs. Even if the Price's new general ledger contains similar figures as they existed when the original account was deleted (which may not be the case), it is undisputed that the ***metadata***—which would show how, when, and by whom the expenses and revenues were originally recorded and/or subsequently changed—has been ***irretrievably lost***. AXIS is entitled to that information in discovery and is not obliged to accept Plaintiffs' representation in litigation that the information would not have been illuminating.

### B. Plaintiffs Cannot Hide Behind Lack of Sophistication When They Were Represented by Sophisticated Counsel

As AXIS predicted, Plaintiffs have relied on their lack of sophistication as a factor militating against sanctions. Under the circumstances, for the reasons already explained in the initial motion, this is wrong. When the data was destroyed, Plaintiffs were represented by counsel. As discussed in AXIS's motion, by law, Plaintiffs' counsel have the duty to ensure that their clients retain discoverable information. If Dustin or Lisa Anderson were ignorant regarding their duty to preserve electronic information, counsel had a duty to inform them.

In addition, the Declaration of William Marx, submitted with Plaintiffs' Response, shows that the spoliation was even more egregious. According to that declaration, the data was destroyed 90 days after October 17, 2017, *i.e.*, on January 17, 2018. Dkt. 118, ¶ 3. ***This was eleven (11) days <u>after</u> Plaintiffs' discovery responses <u>were due</u>***. Thus, at the same time that Plaintiffs' counsel were making unmeritorious objections to AXIS's discovery responses, and failing to produce even undisputedly responsive documents, they were allowing important

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 5
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\38276907\1

data requested in those responses to be destroyed. Plaintiffs should not be permitted to profit from this conduct.

### C. The Data Was in Plaintiffs' Control

Finally, Plaintiffs make the rather absurd argument that the QuickBooks data was out of their control. This ignores the salient and undisputed fact that Plaintiffs could have prevented deletion of the data by simply paying their bill. Plaintiffs' response establishes only that, in some hypothetical situation and in some unspecified ways, Plaintiffs might have marginally less control over the data because it is stored on the "cloud." But *in this case*, the data was destroyed *solely* because *the Plaintiffs* failed to pay their bills. *In this case*, the data was destroyed *41 days after AXIS requested the data be produced*. Even if the Plaintiffs were not aware of the threat of deletion before the discovery was received, the Plaintiffs and their attorneys were obligated to gather the information, and had the Plaintiffs and their attorneys made any effort to secure the information for production, they would have learned that the bill needed to be paid or the data would be lost. ***The Plaintiffs and their attorneys have failed to tell the Court why they allowed the data to be destroyed 41 days after they received the discovery requests***. If they had simply acted with due diligence, they could have paid the bill and the data would not have been deleted. That is quite obviously sufficient "control."

DATED this 14th day of September, 2018.

COZEN O'CONNOR

By: */s/ Jonathan Toren*
Thomas M. Jones, WSBA No. 13141
Craig H. Bennion, WSBA No. 11646
William F. Knowles, WSBA No. 17212
Jonathan Toren, WSBA No. 46896
999 Third Avenue, Suite 1900
Seattle, Washington 98104
Telephone: 206.340.1000

*Attorneys for Defendant AXIS Surplus Insurance Company*

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S
REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 6
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\38276907\1

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED AND SIGNED this 14th day of September, 2018.

                                  COZEN O'CONNOR

                                  By: */s/ Bonnie L. Buckner*
                                           Bonnie L. Buckner, Legal Secretary

DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS - 7
NO.: 17-CV-00784-JCC

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE
SUITE 1900
SEATTLE, WASHINGTON 98104
(206) 340-1000

LEGAL\38276907\1